## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| TYLER CANDLE COMPANY, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO: |
| | § | |
| R&W COMPANY, L.L.C., a Texas limited | § | DEMAND FOR JURY TRIAL |
| limited liability company, and | § | |
| CHRISTOPHER WHITLEY, a natural | § | |
| person. | § | |

---

## COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §1114, 15 U.S.C. §1125(a), AND RELATED CLAIMS

Plaintiff Tyler Candle Company, L.L.C. (referenced as "Tyler Candle" or "Plaintiff") brings this action against Defendants R&W Company, L.L.C. and Christopher Whitley (collectively referenced as "Defendants," individually as "R&W Company" and "Mr Whitley") for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114 and 15 U.S.C. §1125; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a)(1)(A); and (3) trademark infringement and unfair competition under Texas common law.  These claims arise from Defendants' misappropriation of Tyler Candle's trademark DIVA® in connection with Defendants' unlawful sale on the Internet of materially different and non-genuine products bearing Tyler Candle's trademark to unwitting customers. In support of its complaint, Tyler Candle alleges as follows:

## PARTIES

1.      Tyler Candle Company, LLC is a limited liability company, organized under the laws of Texas, with its principal place of business located in Tyler, Texas.

2.      R&W Company LLC is a limited liability company, organized under the laws of Texas, with its principal place of business located in Burleson, Texas.  Christopher Whitley is an individual natural person residing in Burleson, Texas, and a manager, owner and director of R&W Company.  Defendants are acting in concert as part of a coordinated scheme to unlawfully sell products bearing Tyler Candle's trademark through multiple online storefronts.  Mr. Whitley authorized, directed, or participated in the infringement by R&W Company, and therefore Mr. Whitley and R&W Company should be held jointly and severally liable for the resulting damages.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331, 28 U.S.C. §1338, and 28 U.S.C. §1367.  Plaintff's federal claims are predicated on 15 U.S.C. §1114 and 15 U.S.C. §1125(a), and its claims arising under the laws of the State of Texas are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

4.      This Court has personal jurisdiction over Defendants, because they reside in Texas.

5.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. §1391(b) with 28 U.S.C. §1391(c)(2), because Defendant R&W Company is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Tyler Candle and Its Trademarks

6.      Tyler Candle develops, manufactures, and sells many fragranced home products, including but not limited to candles, laundry detergents, and room sprays, under various trademarks, including but not limited to DIVA®, FRENCH MARKET®, and numerous other registered and unregistered trademarks.  Tyler Candle sells it products wholesale to carefully

selected retailers, such as gift shops, boutiques and a few high-quality online retailers, who resell the products to end consumers.

7.     Tyler Candle devotes a significant amount of time, energy, and resources to protecting the value of its trademarks, products, name, and reputation.  By distributing Tyler Candle products exclusively through its chosen retailers, Tyler Candle ensures the safety, well-being, and satisfaction of consumers and maintains the integrity and reputation of the Tyler Candle family of trademarks.  In the highly competitive fragranced home goods market, product quality and customer service are a fundamental part of a consumer's decision to purchase a product.

8.     To promote and protect its intellectual property rights, Tyler Candle has registered numerous trademarks with the United States Patent and Trademark Office. These trademarks include, but are not limited to: DIVA® (U.S. Trademark Registration Nos. 2,995,324, 3,720,833, 4,186,151, 5,398,972, and 3,985,866), and FRENCH MARKET® (U.S. Trademark Registration Nos. 2,995,237, 3,622,914, 3,985,867, and 4,186,006) (collectively, the "Tyler Candle Trademarks").

9.     The registration for each of the Tyler Candle Trademarks is valid, subsisting, and in full force and effect.

10.     Further, Tyler Candle's rights to use the Tyler Candle Trademarks involved in this action have become incontestable under 15 U.S.C. §1065 because the trademarks have been in continuous use, Tyler Candle received no final legal decision issued against the trademarks, and Tyler Candle timely filed a Section 15 Declaration describing the trademarks' use.  Accordingly, these trademark registrations serve as conclusive evidence of (1) Tyler Candle's ownership of the marks, and (2) Tyler Candle's exclusive right to use and direct the use of the marks in commerce

and in connection with the sale and distribution of products bearing the marks identified in the registrations, as provided by 15 U.S.C. §1115(b).

11.      Tyler Candle actively uses and markets the Tyler Candle Trademarks in commerce.

12.      Due to the quality and exclusive distribution of Tyler Candle products, and because Tyler Candle is recognized as the source of high-quality products, the Tyler Candle Trademarks have substantial value.

<b>Online Marketplaces and the Threat They Pose to<br>Tyler Candle's Quality Controls, Reputation, and Goodwill</b>

13.      E-commerce retail sales have exploded over the past decade. From 2009 through the end of 2022, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 14.7%. *E-Commerce Retail Sales as a Percent of Total Sales*, Federal Reserve Bank of St. Louis (February 17, 2023),

https://fred.stlouisfed.org/series/ECOMPCTSA.

14.      In 2022 consumers spent $1.03 trillion on e-commerce sales, a 7.7% increase from 2021. *See* Paul Conley, *U.S. ecommerce in 2022 tops $1 trillion for first time*, Digital Commerce 360 (February 17, 2023), https://www.digitalcommerce360.com/article/us-ecommerce-sales//.  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  For example, in 2021 United States consumers spent more than $378 billion in e-commerce sales on Amazon, which was an 18.8% increase from 2020 and 43.5% of total e-commerce sales in 2021.

15.      Although online marketplaces are becoming increasingly popular among consumers, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

16.      Unlike when purchasing products at brick-and-mortar stores or in interpersonal transactions, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them.  Instead, consumers must trust that the product they

select over the Internet will be authentic and of the quality they expect and typically receive from the manufacturer.

17. The business press has also reported extensively on how there is an "epidemic" of counterfeit products being sold on the online marketplaces that unauthorized sellers are exploiting because they know consumers trust marketplaces and think the products they are buying through the marketplaces are genuine. *See* Spencer Soper, *Amazon Gets Real About Fakes*, Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes; Jay Greene, *How Amazon's quest for more, cheaper products has resulted in a flea markets of fakes*, THE WASHINGTON POST, Nov. 14, 2019, https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-cheaper-products-has-resulted-flea-market-fakes/.

18. The problem of sales of counterfeit and other poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of e-commerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, counterfeit goods and products that "violate a right holder's trademark or copyright" are being sold at an accelerating rate on e-commerce platforms. The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online. *See* Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf.

19. In its 2018, 2019, 2020, 2021, and 2022 annual reports to its shareholders, Amazon acknowledged that third party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to

consumers.  *See, e.g.,* Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 2, 2023), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/336d8745-ea82-40a5-9acc-1a89df23d0f3.pdf  Amazon conceded that these actions are "violating the proprietary rights of others" and warned its investors that it could be liable for "unlawful activities" of Amazon third-party sellers.

20.    Because manufacturers have no relationship with or control over unauthorized sellers, manufacturers have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic.  A manufacturer's inability to exercise control over the quality of its products presents serious risks to the health and safety of consumers—particularly when, as here, a manufacturer's products are used in their homes.

**Tyler Candle's Discovery of Defendants' Scheme and Sales of Infringing Products**

21.    Because the unauthorized sale of products bearing Tyler Candle trademarks over the Internet threatens the safety of consumers and the reputation and goodwill associated with the Tyler Candle Trademarks, Tyler Candle actively monitors the sale of products bearing Tyler Candle trademarks online.

22.    Through these efforts, Tyler Candle discovered in December 2023 that quantities of products bearing the Tyler Candle Trademarks DIVA® and FRENCH MARKET® were being unlawfully sold by Defendants through a storefront called "rwcoshop.com" and on Etsy through a storefront called "RWco."  The undersigned attorney Daniel V. Thompson was tasked by Tyler Candle with stopping the Defendants' infringement, and in an initial effort to do, called and spoke to Mr. Whitley on the telephone late in the afternoon of December 14, 2023.  Mr. Thompson explained the problem to Mr. Whitley, and Mr. Whitley said he would stop using DIVA® for detergent and FRENCH MARKET® for candles, which were the infringements known at that time.  After about a week, it was confirmed that Defendants were no longer selling the infringing products by rechecking the aforesaid storefronts

23.     In March 2024 Tyler Candle sent Defendants a cease-and-desist letter concerning the sales of fragrance oils bearing the DIVA® and other Tyler Candle trademarks.  Fragrance oils are an ingredient used in making candles, detergent and other fragranced home products.   In an email discussion with Daniel V. Thompson that followed, Mr. Whitley indicated he thought the letter was instead about prior complained-of laundry detergent, candles and other finished goods, and stated "If you'll let me know what platforms these were found on I'll get them removed. I thought we had taken them all down."  Thus, Mr. Whitley confirmed his knowledge that he was not to be selling DIVA® products.  (He ultimately agreed to stop selling DIVA® and other Tyler Candle trademarked fragrance oils, as well.)

24.     In August 2024, Tyler Candle discovered that Defendants were again selling DIVA® laundry detergent, this time on a TikTok storefront called "rwcocandles" as shown here:



And here:



This is a close up of the first web page:



This is despite Defendants' assurances they would not do so.  It is evident that Defendants' words on these matters cannot be trusted, and thus judicial intervention by way of the instant action is required and justified.

**Tyler Candle Has Suffered Substantial Harm as a Result of Defendants' Conduct**

25.     As a proximate result of Defendants' actions, Tyler Candle has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of its intellectual property, harm to the goodwill associated with the Tyler Candle brands, and damage to its existing and potential business relations.  The injury to Tyler Candle is immediate and irreparable, as Tyler Candle's reputation and relationships have been damaged among both wholesale customers and consumers.

26.     Defendants' conduct was and is knowing, intentional, willful, malicious, wanton, and contrary to law.

27.     Tyler Candle is entitled to injunctive relief, because Defendants will otherwise continue to unlawfully sell products bearing the Tyler Candle Trademarks that are materially different from genuine Tyler Candle products and are not subject to, interfere with, and do not abide by Tyler Candle's quality controls, thereby compromising Tyler Candle's quality controls. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to Tyler Candle's reputation, goodwill, business relationships, intellectual property, and brand integrity.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)**

28.     Tyler Candle re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

29.     Tyler Candle owns the Tyler Candle Trademarks.

30.     Tyler Candle has registered the Tyler Candle Trademarks with the United States Patent and Trademark Office.

31.     The Tyler Candle Trademarks are valid and subsisting trademarks in full force and effect.

32.     Defendants have willfully and knowingly used, and continue to use, the Tyler Candle Trademarks in interstate commerce for the purpose of selling products bearing the Tyler Candle Trademarks without Tyler Candle's consent.

33.     The products bearing the Tyler Candle Trademarks that Defendants sell are not authorized for sale by Tyler Candle.

34.     Defendants' use of the Tyler Candle Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Tyler Candle Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Tyler Candle when they are not.

35.     Defendants' use of the Tyler Candle Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine Tyler Candle products.

36.     The products sold by Defendants are not, in fact, genuine Tyler Candle products. The products sold by Defendants are materially different from genuine Tyler Candle products because, among other reasons, they are not subject to, do not abide by, and interfere with Tyler Candle's quality control requirements.

37.     Defendants' unauthorized use of the Tyler Candle Trademarks has materially damaged the value of the Tyler Candle Trademarks, caused significant damage to Tyler Candle's business relations, and infringed on the Tyler Candle Trademarks.

38.     As a proximate result of Defendants' actions, Tyler Candle has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be

proven at trial.  The injury to Tyler Candle is immediate and irreparable, as Tyler Candle's reputation and relationships have been damaged among both wholesale customers and consumers.

39.     Tyler Candle is entitled to recover its damages caused by Defendants' infringement of the Tyler Candle Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

40.     Tyler Candle is entitled to injunctive relief under 15 U.S.C.  1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, Tyler Candle will suffer irreparable harm.

41.     Tyler Candle is entitled to enhanced damages and attorneys' fees under 15 U.S.C. §1117, because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Tyler Candle Trademarks.

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**15 U.S.C. §1125(a)(1)(A)**

42.     Tyler Candle re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

43.     Tyler Candle owns the Tyler Candle Trademarks.

44.     Tyler Candle has registered the Tyler Candle Trademarks with the United States Patent and Trademark Office.

45.     The Tyler Candle Trademarks are valid and subsisting trademarks in full force and effect.

46.     Defendants have willfully and knowingly used, and continue to use, the Tyler Candle Trademarks in interstate commerce for the purpose of selling products bearing the Tyler Candle Trademarks without Tyler Candle's consent.

47.     The products bearing the Tyler Candle Trademarks that Defendants sell are not authorized for sale by Tyler Candle.

48.     Defendants' use of the Tyler Candle Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Tyler Candle Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Tyler Candle when they are not.

49.     Defendants' unauthorized sale of products bearing the Tyler Candle Trademarks and unauthorized use of the Tyler Candle Trademarks in advertising infringes on the Tyler Candle Trademarks.

50.     Defendants' unauthorized sale of products bearing the Tyler Candle Trademarks and unauthorized use of the Tyler Candle Trademarks in advertising has materially damaged the value of the Tyler Candle Trademarks and has caused significant damages to Tyler Candle's business relations.

51.     As a proximate result of Defendants' actions, Tyler Candle has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial. The injury to Tyler Candle is immediate and irreparable, as Tyler Candle's reputation and relationships have been damaged among both wholesale customers and consumers.

52.     Tyler Candle is entitled to recover its damages caused by Defendants' unfair competition and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

53.     Tyler Candle is entitled to injunctive relief under 15 U.S.C. §1116 because it has no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Tyler Candle will suffer irreparable harm.

54.     Tyler Candle is entitled to enhanced damages and attorneys' fees under 15 U.S.C. §1117 because Defendants willfully, intentionally, maliciously, and in bad faith engaged in unfair competition.

**THIRD CAUSE OF ACTION**
**Texas Common Law Trademark Infringement and Unfair Competition**

55.     Tyler Candle re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

56.     This claim arises under the common law of the State of Texas.

57.     Tyler Candle owns the Tyler Candle Trademarks.

58.     Tyler Candle has registered the Tyler Candle Trademarks with the United States Patent and Trademark Office.

59.     The Tyler Candle Trademarks are valid and subsisting trademarks in full force and effect.

60.     Defendants have willfully and knowingly used, and continue to use, the Tyler Candle Trademarks in interstate commerce for the purpose of selling products bearing the Tyler Candle Trademarks without Tyler Candle's consent.

61.     The products bearing the Tyler Candle Trademarks that Defendants sell are not authorized for sale by Tyler Candle.

62.     Defendants' use of the Tyler Candle Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Tyler Candle Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Tyler Candle when they are not.

63.     Defendants' use of the Tyler Candle Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine Tyler Candle products.

64.     The products sold by Defendants are not, in fact, genuine Tyler Candle products. The products sold by Defendants are materially different from genuine Tyler Candle products because, among other reasons, they are not subject to, do not abide by, and interfere with Tyler Candle's quality control requirements.

65. Defendants' unauthorized use of the Tyler Candle Trademarks has materially damaged the value of the Tyler Candle Trademarks, caused significant damage to Tyler Candle's business relations, and infringed on the Tyler Candle Trademarks.

66. As a proximate result of Defendants' actions, Tyler Candle has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial. The injury to Tyler Candle is immediate and irreparable, as Tyler Candle's reputation and relationships have been damaged among both wholesale customers and consumers.

67. Tyler Candle is entitled to recover its damages caused by Defendants' unfair competition and infringement of the Tyler Candle Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

68. In harming Tyler Candle, Defendants have acted with willful misconduct and actual malice. Accordingly, Tyler Candle is entitled to an award of punitive damages.

## CONDITIONS PRECEDENT

69. All conditions precedent to Tyler Candle's claims for relief, if any, have occurred or have been performed.

## TOLLING OF STATUTE OF LIMITATIONS

70. The statute of limitations is tolled by one or more of the following doctrines: continuing tort doctrine, discovery rule, fraudulent concealment.

## REQUEST FOR ATTORNEYS' FEES

71. Tyler Candle is entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Tyler Candle hereby seeks such recovery from Defendants of all its reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

## JURY DEMAND

72. Tyler Candle demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Tyler Candle prays for relief and judgment as follows:

A.      Judgment in favor of Tyler Candle and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, exemplary damages, and pre-judgment and post-judgment interest as permitted by law;

B.      That preliminary and permanent injunctions be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

   i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Tyler Candle products,

   ii)      Prohibiting the Enjoined Parties from using any of the Tyler Candle Trademarks in any manner, including advertising on the Internet,

   iii)      Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Tyler Candle products as well as any products bearing any of the Tyler Candle Trademarks,

   iv)      Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Tyler Candle Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Tyler Candle's products, or any of the Tyler Candle Trademarks,

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Tyler Candle Trademarks which associate Tyler Candle's products or the Tyler Candle Trademarks with the Enjoined Parties or the Enjoined Parties' websites,

vii)    Requiring the Enjoined Parties to take all action to remove the Tyler Candle Trademarks from the Internet, including from the website www.amazon.com; and

viii)   Requiring Defendants to destroy or return to Tyler Candle all products bearing the Tyler Candle Trademarks in Defendants' possession, custody, or control.

C.      An award of attorneys' fees, costs, and expenses; and

D.      Such other and further relief as the Court deems just, equitable and proper.

Dated: October 3, 2024              Respectfully submitted,

/s/ Daniel V. Thompson
Texas State Bar No. 19909200
dt@dfwpatent.com
THE LAW OFFICE OF DANIEL V. THOMPSON, P.C.
11817 Judd Court, Suite 103
Dallas, TX 75243
Telephone: (972) 479-0900